**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
*Richmond Division*

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 3:23-cr-24** |
| | ) | **Hon. M. Hannah Lauck** |
| **GEORGE NATHANIEL BOYKINS,** | ) | **Trial Date: March 4, 2024** |
| | ) | |
| **Defendant.** | ) | |

**MOTION CONTESTING 18 U.S.C. § 1028A(a)(1)'s
CONSTITUTIONALITY IN LIGHT OF _DUBIN_**

COMES NOW, the defendant George Nathaniel Boykins, by and through counsel, and moves this Court to find 18 U.S.C. § 1028A(a)(1) unconstitutionally vague in violation of the Fifth Amendment to the United States Constitution.  Mr. Boykins raises both a facial and as-applied challenge to this statute and to Counts 5 and 6 of the indictment in this matter, as they charge him with violation of § 1028A.

**A.  Background**

The indictment in this case charges Mr. Boykins with four counts of health care fraud, in violation of 18 U.S.C. § 1347, and two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A.  (ECF 3).  Section 1028A provides that "[w]however, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years."  In this case, the health care fraud counts function as the predicate offenses to which the aggravated identity county attach.  The aggravated identify theft statute imposes a mandatory 2-year

1

consecutive custodial term.

The basic facts of the case are that Mr. Boykins was a qualified Mental Health Professional (QMHP) and, allegedly, knowingly executed and attempted to execute a scheme and artifice to defraud Medicaid in connection with the payment for health care benefits, items, and services. The indictment alleges that Mr. Boykins knowingly billed Medicaid for purported completion of individual, in-person medical services that Mr. Boykins knew he had not provided. The allegation is that Mr. Boykins billed for services for different Medicaid recipients when he was outside of the United States and "double-billed" during a time that he worked for two different companies.

On June 8, 2023, the Supreme Court issued its decision in *Dubin v. United States*, 599 U.S. 110 (2023). In *Dubin*, Associate Justice Neil M. Gorsuch in concurrence states that § 1028A likely fails the Fifth Amendment and its attendant vagueness jurisprudence. *See e.g., id.* at 133 (concurrence stating that "[1028A] fails to provide even rudimentary notice of what it does and does not criminalize. We have a term of laws like that. We call them vague. And "[i]n our constitutional order, a vague law is no law at all." *United States v. Davis*, 588 U.S. ____(2019)). *Dubin*, at 133 (concurrence).

In *Dubin*, the Court considered the proper scope and nexus between a predicate offense and the aggravated identity theft statute, § 1028A, and analyzed when the two-year enhanced custodial term is appropriately applied. In *Dubin*, the government had argued that § 1028A should be interpreted by a reviewing court to apply in all cases in which "the use of the means of identification . . . facilitated or furthered the predicate offense *in some way.*" *Id.* (cleaned up) (emphasis added). The Court rejected the government's overbroad "maximalist" approach and adopted a more "restrained reading of the statute because "the Constitution prohibits the Judiciary

from resolving reasonable doubts about a criminal statute's meaning by rounding up to the most punitive interpretation its text and context can tolerate." *Id.* at 134 (citing *Wooden v. United States,* 595 U.S. ____, 142 S.Ct. 1063, 1081-1084 (2022)) (GORSUCH, J., concurring in judgment)). Instead, the Court reasoned that § 1028A attached to a predicate offense when the use or means of the identification at issue played a substantial role in causing the commission of the offense or functioned as the salient factor in the commission of the predicate offense. *Dubin*, at 120, 122-23. The Court's distilled holding in *Dubin* is that a violation of § 1028A(a)(1) occurs whenever the use of the mean of identification is at the crux of the underlying criminality, or the means of identification specifically is in some way a key mover in the criminality, or the means of identification is the central role in the commission of the offense. *Id.* at 123, 132.

In his concurrence, Justice Gorsuch argued that § 1028A is unconstitutional for vagueness because "the statute fails to provide even rudimentary notice of what it does and does not criminalize." *Dubin*, 143 S.Ct. at 133 (Gorsuch, J., concurring). While the Supreme Court attempted to provide some clarity in *Dubin* regarding when a person should be subjected to the enhanced penalty under 1028A, Justice Gorsuch argues that the test and rules put forth by the majority only bring about more questions. There is "no boundary [that] separates conduct that gives rise to liability from conduct that does not." *Id.* at 137.

Justice Gorsuch's concurrence reasoned that although the Court's holding instructs a lower court on how *not* to read § 1028A to avoid overbreadth, the rationale offers little guidance on how the statute should be read to avoid the patent vagueness. *Id.* at 134. Specifically, Justice Gorsuch reasoned that the Court's opinion does not provide a workable causation standard between the predicate offense and § 1028A because in "virtually every fraud, a means of identification plays some critical role in the fraud's success . . .." *Id.* Furthermore, the opinion

3

left unresolved "[j]ust how much causation must a prosecutor establish to sustain 1028A(a)(1) conviction? For that matter, how does one even determine the extent to which a means of identification caused an offense, as compared to the many other necessary inputs." *Id.* at 135 (internal citations omitted).

Ultimately, Justice Gorsuch reasoned that traditional cannons of statutory construction cannot save § 1028A because there "are an uncountable number of ways in which an individual could use the means of identification of another to commit fraud." *Id.* at 138 (internal citations omitted). Justice Gorsuch furthered stated that the conduct variations to which § 1028A potentially applies demonstrates the statute's unconstitutionality under the Court's vagueness doctrine:

> That list covers everything from including a victim's name in the subject line of a fraudulent email; to misrepresenting information on a loan form involving a co-signer; *to putting on a wig and walking into a bank with a fake ID*. And no obvious neutral rule exists to separate those uses that violate § 1028A(a)(1) from others that do not. In this way, § 1028A(a)(1) is not just an ambiguous statute—one that does define prohibited conduct with some precision, but [that] is subject to two or more different interpretations. Instead, it is a vague statute—one that does not satisfactorily define the proscribed conduct at all.

*Id.* at 138-139 (emphasis added).

### B. Applicable Law

The Fifth Amendment protects against the deprivation of life, liberty, or property, "without due process of law . . . [The] [g]overnment violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). "When Congress passes a vague law, the role of courts under our Constitution is not to fashion a new, clearer law to take its place, but to treat the law as a nullity and invite Congress to try

4

again." *Davis*, 139 S. Ct. at 2323. The Supreme Court's "doctrine prohibiting the enforcement of vague laws rests on the twin constitutional pillars of due process and separation of powers." *Id.* at 2325; *see also Sessions v. Dimaya*, 584 U.S. 138 S. Ct. 1204, 1212-1213 (2018). "Vague laws contravene the 'first essential of due process of law' that statutes must give people 'of common intelligence' fair notice of what the law demands of them. *Davis*, 139 S. Ct. at 2325 (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926)). "Vague laws also undermine the Constitution's separation of powers and the democratic self-governance it aims to protect. Only the people's elected representatives in the legislature are authorized to make an act a crime." *Id.* (internal citations omitted). "Vague statutes threaten to hand responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges, eroding the people's ability to oversee the creation of the laws they are expected to abide." *Id.*

As to due process, the void for vagueness doctrine ensures "two due process essentials." *Skilling v. United States*, 561 U.S. 358, 405-06 (2010). First, a criminal statute must define the offense "in a manner that does not encourage arbitrary and discriminatory enforcement." *Id.* at 402-03. Second, a criminal statute must define the offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited." *Id.* "The degree of vagueness that the Constitution [allows] depends in part on the nature of the enactment: In particular, the Court has 'expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe.'" *Dimaya*, 138 S. Ct at 1212-13 (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498–499 (1982)). "The prohibition of vagueness in criminal statutes is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law, and a statute that flouts it

violates the first essential of due process." *Johnson*, 576 U.S. at 595 (internal citations omitted).

### C. Argument

In 2004, Congress passed the Identity Theft Penalty Enhancement Act. Pub. L. No. 108-275, 118 Stat. 831 (2004) (codified at 18 U.S.C. §§ 641, 1028, 1028A). Section 1028A, is a creature of that legislative effort. Congress passed the act as a corrective because "many identity thieves receive short terms of imprisonment or probation; after their release, many of these thieves will go on to use false identities to commit much more serious crimes. H.R. 1731 provides enhanced penalties for persons who steal identities to commit terrorist acts, immigration violations, firearms offenses, and other serious crimes." H.R. Rep No. 1731, at p. 3 (2004), *available online* at https://www.congress.gov/108/crpt/hrpt528/CRPT-108hrpt528.pdf.

The aggravated identity theft statute "applies when a defendant, 'during and in relation to any [predicate offense], knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person.'" *Dubin*, at 115. Both the term "use" and the phrase "in relation to" can support a multitude of possible meanings. *Id.* at 118-119.

Facially and as-applied, § 1028A, fails the Fifth Amendment vagueness test as it cannot provide "people [either] fair notice of the conduct it punishes, and [because it is] so standardless that it invites arbitrary enforcement." *Johnson*, 576 U.S. at 595. Beginning with standards, § 1028A functions without a demarcated or ascertainable endpoint. As Justice Gorsuch's concurrence aptly shows, effectively every use of another person's personalized information or means of identification (a term not defined under § 1028A) can result in § 1028A liability. Even the Court's updated "crux," "key-mover," and "central role" test does not save the statute from violating the Fifth Amendment according to Justice Gorsuch:

Suppose that, instead of misrepresenting the cut of its steaks, a restaurant charged a customer for an appetizer he ordered that never arrived. What about an appetizer he never ordered? An additional entrée? Three? Three plus a $5,000 bottle of Moët? How about a Boeing 737? Now suppose the restaurant ran the customer's credit card for the same steak twice. What if it waited an hour to do so? A day? A year? What if the waiter gave the credit card information to a different employee at the same restaurant to run the charge? A different employee at a different restaurant? What if the restaurant sold the customer's credit card information on the dark web, and *another* restaurant ran the card for filet mignon? On the Court's telling, the "crux" of the fraud in some of these examples lies merely in "*how* and *when* services were provided," while in others the "crux" involves "*who* received the services." *Ante,* at 132. But how to tell which is which?

The Court's crux test seemingly offers no sure way through this blizzard of . . . hypotheticals. Nor is that because I have cherry-picked "hard cases. Scenarios like these—and variations of them—illustrate the sorts of problems that invariably arise in even simple § 1028A(a)(1) cases involving bogus restaurant bills. Other contexts can present still greater complications and still deeper uncertainties. The problem we face, then, is not that § 1028A(a)(1) presents some hard cases at its edges; the problem is this statute has no easy cases. Really, you could spend a whole day cooking up scenarios—ranging from the mundane to the fanciful— that collapse even your most basic intuitions about what § 1028A(a)(1) does and does not criminalize. Try making up some of your own and running them by a friend or family member. You may be surprised at how sharply instincts diverge.

*Dubin*, at 136.

Consider the facts of this case. Accepting the government's version of the events as true, was the use of an established client's means of identification the crux of the healthcare fraud? Was the use of that client's means of identification at "the heart" of the fraud or was it the "key mover?" Was the "key mover" or the "crux" of Mr. Boykins' individual conduct the use of the means of identification of another or some other conduct such as submitting false progress notes to his employer, which were then submitted to Medicaid, indicating he saw a patient during a period of time when he was out of the country on vacation, or indicating he saw a patient during a time when he claimed to have seen a different patient (double-billing)? *See* ECF 3 (Indictment, ¶¶ 15-18). Indeed, the paragraphs in the indictment describing the healthcare fraud discuss in great detail the daily logs

7

that must be kept by health care providers, the progress notes that must be prepared, the name of the service rendered, and date of service rendered being the critical information contained in the progress notes, and the amount of time spent delivering the service.  (ECF 3, ¶¶9-10).  It would matter not what patient's information was tied to the progress notes submitted to Medicaid for billing.  Accordingly, how can Mr. Boykins be on notice that he is violating an identify theft statute when the identity of the recipient of services in the government's allegations of fraud "is an ancillary feature of the billing method employed." *Dubin* at 132.

 Consider additionally that Mr. Boykins has been charged with three counts of health care fraud, in violation of 18 U.S.C. § 1347.[1]  As Justice Gorsuch noted, "in virtually every fraud" prosecution at least a modicum of the means of an identification is at issue.  *Dubin*, at 135.

Accordingly, does that translate into every act of fraud being eligible for enhancement under the aggravated identity theft statute?  Does that comport with Congress' intent in passing the statute, to avoid shorter prison terms?  As applied here, is Mr. Boykins subject to a short prison term without application of the aggravated identity theft statute?  Without a discernible limiting principle, the aggravated identity theft statute provides no standard for what it proscribes in relation to fraud or conversely when it should not apply to a fraud prosecution.  The lack of a limiting principle renders the statute unworkably vague as applied and facially.  *See Johnson*, 576 U.S. at 595

That the statute can be applied in effectively every fraud case, or not applied, invites arbitrary enforcement.  Indeed, as Justice Gorsuch noted, a means of identification or

---

[1] The defendant in *Dubin* was charged with healthcare fraud under 18 U.S.C. § 1347. *Dubin*, at 115. The Court held '[t]he crux of the healthcare fraud was a misrepresentation about the qualifications of petitioner's employee.  The patient's name was an ancillary feature of the billing method employed." *Id.* at 132.  In other words, Dubin's fraud "was in misrepresenting how and when services were provided to a patient, not *who* received the services." *Id.*

information relating to an individual account holder is fundamental to most fraud, if only to create the requisite false or fraudulent pretenses to obtain funds illegally. However, aggravated identity theft is not charged in every healthcare fraud case. Nor is the statute applied in every wire fraud or other fraud cases. The statute's breadth and reach enable it to function as a means to an individual prosecutor's case ends. The statute's malleability invokes the very concerns over arbitrary enforcement that animate the Supreme Court's vagueness jurisprudence. *See e.g.*, *Johnson* 576 U.S. at 597 (the Supreme Court stating that it was "convinced that the indeterminacy of the wide-ranging inquiry required by [the challenged statute] both denies fair notice to defendants and invites arbitrary enforcement by judges."). The aggravated identity theft's similar indeterminacy warrants a finding of constitutional vagueness.

As to fair notice, facially there is little to support that the statute here provides a person of ordinary intelligence fair notice of what is prohibited. *See United States v. Williams*, 553 U.S. 285, 314 (1983). The statute can be applied, or not applied, in effectively every fraud case though Congress' intent in passing the statute was not to enhance the punishment in every fraud case. In addition, as applied to the facts here, an argument can be made that Mr. Boykins' conduct should have put him on notice, assuming its accuracy, of committing healthcare fraud and obtaining the fraudulent payments from Medicaid involved billing under patient names. However, for the sake of argument, it was primarily the progress notes and timesheets – the information contained therein - that was used to secure the funds. Though the government may aver that Mr. Boykins' use of individual patient names should have put him on proper notice under § 1028A, the patient's names did not result in the payment for services, rather, it was the submission of documents attesting to services rendered that caused Medicaid to pay the companies for whom Boykins worked. The names are incidental to that process and cannot be

said to place a person on notice of aggravated identify theft. To conclude otherwise would render the use of a name no matter how tangential adequate notice under the aggravated identity theft statute. Because § 1028A can be applied, or not applied, at the caprice of an individual prosecutor in every fraud case, it cannot be said to provide constitutionally adequate notice. *See Johnson*, 576 U.S. at 597.

The immense difficulty in determining when the means of identification are "at the crux," "a key mover," or play a "central role" in an offense supports Justice Gorsuch's argument that the tests put forth in *Dubin* "present intractable interpretative challenges." *Id.* at 135 (Gorsuch, J., concurring). As "a vague law is no law at all" under our Constitution, § 1028A should be struck for vagueness. *Id.* at 1574 (Gorsuch, J., concurring) (quoting *United States v. Davis*, 139 S.Ct. 2319, 2323 (2019)).

### D. Conclusion

Based on the foregoing, Mr. Boykins respectfully moves this Court to find 18 U.S.C. § 1028A(a)(1) unconstitutionally vague in violation of the Fifth Amendment to the United States Constitution.

Respectfully submitted,
GEORGE N. BOYKINS

By: _____/s/_____
         Counsel

Amy L. Austin
Va. Bar No. 46579
Counsel for the Defendant
Office of the Federal Public Defender
701 E. Broad St., Ste. 3600
Richmond, VA 23219
(804) 565-0880 (ph)
(804) 648-5003 (fax)
Amy_austin@fd.org

Javionté Johnson, Esq.
New York Bar # 5720214
Attorney for the Defendant
Office of the Federal Public Defender
Eastern District of Virginia
701 E. Broad Street, Suite 3600
Richmond, VA 23219
(804) 565-0832
(804) 800-4214 (fax)
Javionte_Johnson@fd.org