**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**UNITED STATES OF AMERICA,**

    **v.**                                                    **Criminal No. 3:23-cr-00024**

**GEORGE NATHANIEL BOYKINS,**

    **Defendant.**

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant George Nathaniel Boykins' Motion to

Dismiss Counts V and VI of the Indictment, charging him with Aggravated Identity Theft in

violation of 18 U.S.C. § 1028A(a)(1) (the "Motion"). (ECF No. 27.)[1] In the Motion, Mr.

Boykins contends that Counts V and VI of his indictment under 18 U.S.C. § 1028A(a)(1)[2] are

unconstitutional both facially and as applied to him because § 1028A(a)(1) is "unconstitutionally

---

[1] Mr. Boykins' filing is entitled "Motion Contesting 18 U.S.C. § 1028A(a)(1)'s
Constitutionality in Light of *Dubin*." (ECF No. 27.) The United States brings Counts V and VI
of the Indictment against Mr. Boykins under 18 U.S.C. § 1028A. (ECF No. 3, at 1, 7.) The
Court construes the Motion as a Motion to Dismiss Counts V and VI of the Indictment, as the
Court would be required to dismiss these Counts if it found 18 U.S.C. § 1028A(a)(1) to be
unconstitutional.

[2] Section 1028A(a)(1) provides:

**(a) OFFENSES.—**

    **(1) IN GENERAL.—**

        Whoever, during and in relation to any felony violation enumerated in
        subsection (c), knowingly transfers, possesses, or uses, without lawful
        authority, a means of identification of another person shall, in addition to
        the punishment provided for such felony, be sentenced to a term of
        imprisonment of 2 years.

18 U.S.C. § 1028A(a)(1).

vague in violation of the Fifth Amendment to the United States Constitution."[3]  (ECF No. 27, at

1, 10.)  Such a finding would require the Court to dismiss Counts V and VI of the Indictment.

On Monday, March 4, 2024, this Court held oral argument on this Motion.  The parties provided

supplemental briefing.  (ECF Nos. 36–38.)  For the reasons articulated below, the Court will

deny the Motion.  (ECF No. 27.)

## I.  Factual and Procedural Background

### A.    Factual Background

When considering a motion to dismiss an indictment, "the indictment allegations are

presumed to be true", *United States v. Treacy*, 677 F. App'x 869, 873 (4th Cir. 2017), so the

Court recounts the following facts from the indictment.

Medicaid is a public insurance program that "provides medical assistance to low-income

individuals who meet certain eligibility criteria."  (ECF No. 3 ¶ 1.)  It is a "'health care benefit

program' as defined in Title 18, United States Code, Section 24(b)."  (ECF No. 3 ¶ 2.)  The

United States Department of Health and Human Services and the Commonwealth of Virginia,

Department of Medical Assistance Service ("DMAS"), supervise and administer Virginia's

Medicaid program.  (ECF No. 3 ¶ 1.)

Virginia's Medicaid program offers Mental Health Skill-Building Services ("MHSS"), a

mental health program.  (ECF No. 3 ¶ 4.)  MHSS providers assist Medicaid recipients in

numerous tasks related to daily living and functional skills.  (ECF No. 3 ¶ 4.)  Providers may

only be reimbursed "for training activities related to these areas, and only where services meet

---

[3] The Fifth Amendment provides, in relevant part:  "No person shall be . . . deprived of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. V.

the revised service definition, service eligibility, and service provision criteria and guidelines."

(ECF No. 3 ¶ 4.)

To provide and be reimbursed for MHSS services, providers must satisfy multiple requirements.  (ECF No. 3 ¶¶ 7–9.)  First, an MHSS provider must qualify as a Qualified Mental Health Professional ("QMHP").  (ECF No. 3 ¶ 7.)  Pursuant to Medicaid regulations, "a QMHP [must] be a clinician in the human services field who is trained and experienced in providing psychiatric or mental health services to individuals who have a psychiatric diagnosis."  (ECF No. 3 ¶ 7.)  Providers must render MHSS "to the Medicaid recipient via direct, face-to-face appointments between the provider and the Medicaid recipient."  (ECF No. 3 ¶ 8.)  Additionally, the "provider must provide such MHSS . . . to only one Medicaid recipient at a time."  (ECF No. 3 ¶ 8.)

Providers must document their MHSS rendered using "a daily log of time involved in the delivery of the services and a minimum of a weekly summary note of services provided", and must "clearly document . . . what occurred during the entire amount of the time billed."  (ECF No. 3 ¶ 9.)  "This documentation is typically referred to as 'progress notes.'"  (ECF No. 3 ¶ 9.) "Progress notes are individual-specific documentation that contain the unique differences particular to the Medicaid recipient's circumstances, treatment, and progress."  (ECF No. 3 ¶ 10.) Progress notes must "convey the patient's status, staff interventions, and, as appropriate" the degree of a patient's progress in their "individual service plan."  (ECF No. 3  ¶ 10.)

"[F]rom at least July 2013 through at least September 2018", Mr. Boykins "was an authorized QMHP" who billed Medicaid for MHSS services.  (ECF No. 3 ¶ 12.)  Over this time period, Mr. Boykins worked for six separate employers, "and often worked for two or more employers" at the same time.  (ECF No. 3 ¶ 12.)

From at least January 2014 through October 2018, Mr. Boykins knowingly schemed to defraud Medicaid by fabricating MHSS services rendered in timesheets and/or corresponding progress notes and dishonestly billing for services that he never provided.  (ECF No. 3 ¶¶ 13–17.)  Mr. Boykins generated at least $164,451.00 through his scheme.  (ECF No. 3, at 8.)

Mr. Boykins schemed to defraud Medicaid in multiple ways.  One portion of Mr. Boykins' scheme involved billing Medicaid for his "purported completion of individual, in-person MHSS" in the Commonwealth of Virginia "that [Mr.] Boykins knew he had not, in fact, provided" because he was not in the United States during the time periods Mr. Boykins billed for.  (ECF No. 3 ¶ 15.)  Mr. Boykins also submitted billings "that falsely claimed that [he] had provided services for different Medicaid recipients on the same dates and times."  (ECF No. 3 ¶ 16.)  From January 2014 through at least September 2018, while simultaneously working for different employers, and without his employers' knowledge that he worked for other employers, Mr. Boykins "submitt[ed] timesheets and/or corresponding progress notes to [his] different employers that . . . covered the same periods of time."  (ECF No. 3 ¶ 16.)

In connection with Mr. Boykins' scheme to defraud Medicaid, Mr. Boykins knowingly and unlawfully possessed and used other persons' identification to misrepresent who was receiving MHSS services.  (ECF No. 3 ¶ 21.)  On both March 16, 2018 and on December 8, 2018, Mr. Boykins "file[d] a knowingly fraudulent reimbursement claim to Medicaid" for MHSS services using a person's "name, date of birth, and insurance identification number."  (ECF No. 3 ¶ 21.)

B.  **Procedural Background**

On February 21, 2023, a Grand Jury indicted Mr. Boykins for:  (1) four counts of Health Care Fraud, in violation of 18 U.S.C. § 1347 (Counts I–IV); and (2) two counts of Aggravated

4

Identity Theft, in violation of 18 U.S.C. § 1028A (Counts V–VI).  (ECF No. 3, at 6–7.)  On February 7, 2024, Mr. Boykins moved to dismiss Counts V and VI of the Indictment, arguing that the Court should "find 18 U.S.C. § 1028A(a)(1) unconstitutionally vague in violation of the Fifth Amendment to the United States Constitution."  (ECF No. 27, at 10.)  On February 9, 2024, the United States opposed the Motion, (ECF No. 28), and on February 16, 2024, Mr. Boykins replied, (ECF No. 31).

On Monday, March 4, 2024, this Court held oral argument on this Motion.  (ECF No. 32.)  At oral argument, Mr. Boykins' Counsel made an oral motion to file Supplemental Briefing, which the Court granted.  (ECF Nos. 32, 33.)  Mr. Boykins' Counsel timely filed Supplemental Briefing in support of the Motion.  (ECF No. 36.)  The United States responded, (ECF No. 37), and filed a Notice of Supplemental Authority, (ECF No. 38).  The matter is ripe for disposition.  For the reasons articulated below, the Court will deny the Motion.  (ECF No. 27.)

## II.  Standard of Review

### A.    Motion to Dismiss Indictment Under Fed. R. Crim. P. 12

Federal Rule of Criminal Procedure 12[4] allows parties to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."  Fed. R. Crim. P. 12(b)(1).  Mr. Boykins raises facial and as-applied challenges to the constitutionality of

---

[4] Rule 12(b)(1) states:

(b) PRETRIAL MOTIONS.

    (1) *In General*.  A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits.  Rule 47 applies to a pretrial motion.

Fed. R. Crim. P. 12(b)(1).

18 U.S.C. § 1028A(a)(1), arguing that it is "unconstitutionally vague in violation of the Fifth Amendment to the United States Constitution." (ECF No. 27, at 1, 10.) "Fed. R. Crim. P. 12(b)(3)(B)[5] permits a court to dismiss a defective indictment. An indictment is defective if it alleges a violation of an unconstitutional statute." *United States v. Brown*, 715 F. Supp. 2d 688, 689 (E.D. Va. 2010) (citing *In re Civil Rights Cases*, 109 U.S. 3, 8–9 (1883)).

"[I]n deciding a pretrial motion to dismiss the indictment, 'a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial.'" *United States v. Horma*, No. 3:18CR18 (MHL), 2018 WL 4214136, at *5 (E.D. Va. Sept. 4, 2018) (quoting *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012)). Rather, when considering a motion to dismiss an indictment, "the indictment allegations are presumed to be true." *Treacy*, 677 F. App'x at 873 (citing *United States v. Stewart*, 744 F.3d 17, 21 (1st Cir. 2014)). A

---

[5] Rule 12(b)(3)(B) states:

(b) PRETRIAL MOTIONS.
    \*    \*    \*

(3) *Motions That Must Be Made Before Trial*. The following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits:
    \*    \*    \*

(B) a defect in the indictment or information, including;

(i) joining two or more offenses in the same count (duplicity);

(ii) charging the same offense in more than one count (multiplicity);

(iii) lack of specificity;

(iv) improper joinder; and

(v) failure to state an offense[.]

Fed. R. Crim. P. 12(b)(3)(B).

defendant must therefore "demonstrate that the allegations [in the indictment], even if true, would not state an offense." *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004) (citing *United States v. Hooker*, 841 F.2d 1225, 1227–28 (4th Cir. 1988) (en banc)).

### B.    Facial and As-Applied Challenges

"To succeed in a facial constitutional challenge, a movant 'must establish that no set of circumstances exists under which the [law] would be valid.'" *United States v. Hosford*, 843 F.3d 161, 165 (4th Cir. 2016) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)); *see Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (stating that a facial challenge can only succeed when a party shows "that the law is unconstitutional in all of its applications") (citing *Salerno*, 481 U.S. at 745). "Because of this stringent standard, a facial challenge is perhaps 'the most difficult challenge to mount successfully.'" *Hosford*, 843 F.3d at 165 (quoting *Salerno*, 481 U.S. at 745).

By contrast, "[a]n as-applied challenge requires only that the law is unconstitutional as applied to the challenger's case[.]" *United States v. Mgmt. Consulting, Inc.*, 636 F. Supp. 3d 610, 619 (E.D. Va. 2022) (citing *Salerno*, 481 U.S. at 745). An as-applied challenge must be "based on a developed factual record and the application of a statute to a specific person." *Richmond Med. Ctr. for Women v. Herring*, 570 F.3d 165, 172 (4th Cir. 2009) (en banc).

### III.  Analysis

Mr. Boykins seeks to dismiss Counts V and VI of the Indictment because, he argues, the statute under which he is indicted for these Counts, 18 U.S.C. § 1028A(a)(1), is unconstitutionally vague both facially and as applied to him. (ECF No. 27, at 1.) Because 18 U.S.C. § 1028A(a)(1) clearly proscribes Mr. Boykins' alleged conduct, *i.e.*, creating fake medical records about treatment never provided on the day the billing indicated by using

7

unsuspecting Medicaid beneficiaries' identities and personal information to misrepresent *who* had received his services, the statue survives a vagueness analysis as applied to Mr. Boykins. Because the deceptive use of a patient's personal, identifying information who did not, in fact, receive treatment is the crux of the health care fraud at bar, all requirements of § 1028A(a)(1) are met. This, in turn, forecloses Mr. Boykins' facial vagueness challenge. *See Hosford*, 843 F.3d at 165 (4th Cir. 2016) ("To succeed in a facial constitutional challenge, a movant 'must establish that no set of circumstances exists under which the [law] would be valid." (internal quotation marks omitted)).

### A.   <u>Statutory Framework</u>

The Government's Indictment and Defendant's Motion to Dismiss implicate two statutes. First, in relevant part, 18 U.S.C. § 1347[6] makes it unlawful for an individual "to defraud any health care benefit program . . . in connection with the . . . payment for health care benefits, items, or services." 18 U.S.C. § 1347(a). Second, 18 U.S.C. § 1028A(a)(1) provides that anyone who commits certain felony offenses, including those in violation of 18 U.S.C. § 1347, will be

---

[6] Section 1347 provides, in relevant part:

(a) Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice—

  (1) to defraud any health care benefit program; or

  (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program,

in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both[.]

18 U.S.C. § 1347(a).

sentenced to two years' imprisonment if "during and in relation" to such felony offenses the person "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." 18 U.S.C. § 1028A(a)(1); *see also Dubin v. United States*, 599 U.S. 110, 115 (2023) ("The predicate offenses [for § 1028A(a)(1)] include, among many others, healthcare fraud." (citing § 1028A(c)(4))).[7]

As discussed in detail below, in *Dubin v. United States*, the Supreme Court recently clarified that to be convicted of aggravated identity theft under § 1028A(a)(1), the use of another individual's identity must be at the "crux of the criminality." 599 U.S. 110, 120, 127, 131 (2023); *see also United States v. Jones*, No. 4:23CR09 (RCY), 2023 WL 4672383, at *5 (E.D. Va. July 20, 2023) (explaining that "*Dubin* established that any of § 1028A's three modalities of conduct—transfer, possession, and use—may constitute a violation, and that the 'use' modality requires deceit as to who is the recipient of the benefit or service" at issue). In this Motion, Mr. Boykins attempts to invoke a theory espoused by Justice Gorsuch in dissent in *Dubin*—one roundly rejected by the majority. Mr. Boykins' effort founders.

## B. <u>Vagueness Doctrine</u>

"The void for vagueness doctrine is rooted in the Due Process Clause of the Fifth and Fourteenth Amendments" of the United States Constitution. *Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 272 (4th Cir. 2019) (citing *Doe v. Cooper*, 842 F.3d 833, 842 (4th

---

[7] 18 U.S.C. § 1028A(c)(4) provides:

(c) Definition.—For purposes of this section, the term "felony violation enumerated in subsection (c)" means any offense that is a felony violation of—
    \*    \*    \*
(4) any provision contained in this chapter (relating to fraud and false statements), other than this section or section 1028(a)(7)[.]

§ 1028A(c)(4).

Cir. 2016)).  The doctrine of vagueness "rests on the twin constitutional pillars of due process and separation of powers."  *United States v. Davis*, 139 S. Ct. 2319, 2325 (2019).  It "require[es] that Congress, rather than the executive or judicial branch, define what conduct is sanctionable and what is not."  *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018).

The Fifth Amendment provides, in relevant part:  "No person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V.  The government violates the Fifth Amendment "by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement."  *Johnson v. United States*, 576 U.S. 591, 595 (2015).  "'[A] statute is unconstitutionally vague if it fails to put a defendant on notice that his [or her] conduct was criminal.  For statutes involving criminal sanctions the requirement for clarity is enhanced.'"  *United States v. Skinner*, 536 F. Supp. 3d 23, 51 (E.D. Va. 2021), *aff'd*, 70 F.4th 219 (4th Cir. 2023) (quoting *United States v. Osinger*, 753 F.3d 939, 946 (9th Cir. 2014)); *United States v. McLamb*, 985 F.2d 1284, 1291 (4th Cir. 1993) (similarly observing that penal statutes must define crimes so "that ordinary people can understand the conduct prohibited and so that arbitrary and discriminatory enforcement is not encouraged")).

The Court must also "consider whether a statute is vague as applied to the particular facts at issue, for "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."  *Holder v. Humanitarian L. Project*, 561 U.S. 1, 18–19 (2010) (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982)) (internal quotations omitted) (alteration in original); *see also United States v. Iannelli*, No. CR 22-10069-NMG, 2023 WL 7165109, at *3

(D. Mass. Oct. 31, 2023) (rejecting vagueness challenge to § 1028A(a)(1) where the statute "clearly proscribed" defendant's conduct).

### C.    After *Dubin*, § 1028A(a)(1) Clearly Proscribes Mr. Boykins' Conduct, Dooming His Vagueness Challenge

Mr. Boykins cautions the Court that even post-*Dubin*, § 1028(A)(1) has no limiting principle and can be applied "in effectively every fraud case", "invit[ing] arbitrary enforcement" and rendering it "unworkably vague as[-]applied and facially." (ECF No. 27, at 8.) He argues that, as a result, he cannot be on notice that he was violating § 1028A(a)(1). (ECF No. 27, at 8.) Mr. Boykins suggests that, because he used names of patients he had previously treated (albeit he later billed for entirely fictional treatment), his conduct falls outside that proscribed by § 1028A(a)(1).[8] (ECF No. 27, at 7–8.) He also suggests, using five Eastern District of Virginia cases as examples, that inconsistent enforcement of the Aggravated Identity Theft Statute renders it unconstitutionally vague because he could not have been on notice that his conduct was illegal. (ECF No. 36, at 2–5.)

For the reasons articulated below, the Court concludes otherwise. Mr. Boykins billed for services to patients who never received them. Whether or not they had received services from him before, Mr. Boykins' alleged scheme involved "deceit as to who [was] the recipient of the benefit or service" at issue, and thus his alleged conduct falls squarely within the classic variety of identity theft left untouched by *Dubin. See, e.g., Jones*, 2023 WL 4672383, at *5 (emphasis added). He also does not persuade the Court that the five cases he identifies as evincing

---

[8] At the core of his argument, Mr. Boykins contends that because he used the names of established patients to bill for entirely fictional treatment, and because, according to Mr. Boykins, it would not matter "what patient's information was tied to the [fraudulent] progress notes", Mr. Boykins could not have been on notice that his conduct would violate an identity theft statute. (ECF No. 27, at 7–8.) The Court does not find support for this position in *Dubin*.

11

inconsistent enforcement create a constitutional infirmity because they differ from his case in material ways.

As a result, § 1028A(a)(1) is not unconstitutionally vague as applied to Mr. Boykins. This in turn forecloses his argument that the law is also facially vague. *See Humanitarian L. Project*, 561 U.S. at 18–19 ("A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.").

### 1. *Dubin* Clarifies § 1028A(a)(1)'s Scope By Introducing the "Crux" Standard

In *Dubin v. United States*, the United States Supreme Court clarified what constitutes "use[]" of a means of identification "in relation to" a predicate felony under § 1028A(a)(1). 599 U.S. at 114, 131–32.[9] To frame its discussion, the Supreme Court first explained that "'identity theft' has a focused meaning." *Id.* at 122. It stated that identity theft has been defined as "[t]he unlawful taking and use of another person's identifying information for fraudulent purposes; specif[ically] a crime in which someone steals personal information about and belonging to another, such as a bank-account number or driver's-license number, and uses the information to deceive others." *Id.* (quoting Black's Law Dictionary 894 (11th ed. 2019) (defining "identity theft") (brackets in original)).

Against this backdrop, the *Dubin* Court explained that "[a] defendant 'uses' another person's means of identification 'in relation to' a predicate offense when this use is at the *crux* of what makes the conduct criminal", "rather than merely an ancillary feature of a billing method." *Id.* at 131, 114 (emphasis added). The Supreme Court emphasized that "being at the crux of the

---

[9] The *Dubin* court noted that § 1028A(a)(1) invokes "a trio of verbs" to "reflect an ordinary understanding of identity theft." 599 U.S. at 124. The Court continued to analyze only the verb "uses" because, among other things, "'transfer' and 'possess' not only connote theft, but identity theft in particular." *Id.* at 126.

criminality requires more than a causal relationship, such as facilitation of the offense or being a but-for cause of its success." *Id.* at 131 (internal quotation marks and citation omitted). Rather, "with fraud or deceit crimes . . . , the means of identification specifically must be used in a manner that is fraudulent or deceptive. Such fraud or deceit going to identity can often be succinctly summarized as going to 'who' is involved." *Id.* at 131–32.

The facts of *Dubin* failed to satisfy this standard. There, a manager of a psychological services company submitted a Medicaid reimbursement claim that, in order to inflate the claimed amount, "overstated the qualifications of the employee" who had treated a particular patient. *See Dubin*, 599 U.S. at 113–14. The manager was convicted of aggravated identity theft on the theory that he had used a "means of identification"—the patient's name and Medicaid reimbursement number listed on the fraudulent claim—in relation to committing healthcare fraud. *Id.* at 115, 128, 132. The Supreme Court vacated the conviction, concluding that the defendant's "use of the patient's name was not at the crux of what made the underlying overbilling fraudulent. The crux of the healthcare fraud was a misrepresentation about the qualifications of [defendant's] employee." *Id.* at 132. The *Dubin* Court emphasized that the patient's name and Medicaid reimbursement number had not been used deceptively because the defendant's fraud had not misrepresented "*who* received the services." *Id.* (emphasis in original).[10]

---

[10] In his Reply, Mr. Boykins asks the Court to interpret *Dubin*'s factual record to conclude that "in *Dubin*, the defendant billed for services not rendered because, while an evaluation was performed, it was not performed by the more qualified provider, therefore, the higher-grade service was not provided. In essence, Dubin billed for a service that was never rendered to the patient." (ECF No. 31, at 3.)

Even if the Court were to accept this reading of *Dubin* (which it does not because in *Dubin*, *some* treatment was provided to the patient for the *very bill* implicated) it would not change this Court's duty to follow the Supreme Court's holding that Dubin was not liable under

Mr. Boykins engaged in health care fraud where the identity of the recipient, not misrepresentation about services provided, played the central role of his criminal conduct. *Dubin*, 599 U.S. at 123.  Post-*Dubin*, healthcare fraud involving a defendant's deceitful misrepresentations regarding "*who* received a certain service", in contrast to misrepresentations solely "regarding *how* or *when* a service was performed", remains punishable under § 1028A(a)(1).  *Id.* at 117 (emphasis in original).

### 2. Fraudulent Conduct Involving Misrepresentation About Who Has Received a Benefit or Service Falls Squarely Within § 1028A(a)(1)'s Scope

Post-*Dubin*, courts interpreting the scope of § 1028A(a)(1) have consistently concluded that the statute reaches fraudulent schemes where a defendant misappropriated a person's identity in a manner that misrepresents whether that person received a benefit or service.  To fall under § 1028A(a)(1), the key mover of that fraudulent scheme must involve a misrepresentation of *who* received the service or benefit.  *Dubin*, 599. U.S. at 122–23.  For example, in *United States v. Gladden*, the United States Court of Appeals for the  Eleventh Circuit considered the challenges of two defendants, Jessica Linton and John Gladden, to their convictions for conspiracy to commit health care fraud, aggravated identity theft in violation of § 1028A(a)(1), and other offenses.  *United States v. Gladden*, 78 F.4th 1232, 1238 (11th Cir. 2023).  Both defendants worked for a pharmaceutical company that filled prescriptions and billed "pharmacy benefit managers (PBMs) and received . . . reimbursement payments from the PBMs and insurance companies" for those prescriptions.  *Id.*  Both defendants contributed "to a company-

---

the "crux" standard because "[t]he crux of [Dubin's] healthcare fraud was a misrepresentation about the qualifications of [Dubin's] employee", where Dubin—unlike Mr. Boykins—in no way misrepresented "*who* received the services." *Dubin*, 599 U.S. at 132 (emphasis in original). Thus, Mr. Boykins' case is factually distinguishable from *Dubin*.

wide scheme [at Global Compounding Pharmacy ("Global")] to defraud pharmacy networks by secretly billing PBMs for medically unnecessary and fraudulent prescriptions." *Id.* at 1238, 1240.

The Eleventh Circuit affirmed Ms. Linton's conviction under § 1028A(a)(1), reasoning that her "conduct [fell] within the statute's purview . . . [because she] deliberately changed the addresses on file" for certain customers to the address of Global's owner "so that Global could continue billing for the products." *Id.* at 1245. In so doing, Ms. Linton used two customer's identities "to continue refilling prescriptions in their names, even though they were neither aware of nor received any products." *Id.* Thus, Ms. Linton's conduct was distinguishable from that in *Dubin*:

> In short, unlike in *Dubin*, [Ms.] Linton did not provide a service to a client while merely misrepresenting how the service was performed to inflate the bill. Rather, Linton used the means of identification of former patients and prescribing doctors to overbill for certain products. [Ms.] Linton's conduct thus falls squarely within the classic variety of identity theft left untouched by *Dubin*. Her use of the [customers'] identifying information was itself fraudulent or deceptive because [Ms.] Linton represented those patients were receiving the refills, despite shipping the product to [another person].

*Id.* at 1246.[11]

Other courts have reached conclusions similar to *Gladden*'s by concluding that a defendant violated § 1028A(a)(1) where the defendant misappropriated a person's identity to make it falsely appear as if that person was receiving a specific service or benefit when, in fact, they were not. *See, e.g., Carter v. United States*, No. 22-12744, 2024 WL 20847, at \*9 (11th Cir.

---

[11] Consistent with that finding, the Eleventh Circuit vacated Mr. Gladden's conviction under §1028A(a)(1). 78 F.4th at 1247–49, 1253. It did so because Gladden's misrepresentations to pharmacy benefit managers and insurance companies "involved only [the ancillary issue of] whether the prescriptions were medically necessary" and at no point mispresented "*who* received the prescriptions." *Id.* at 1248–49 (emphasis added).

Jan. 2, 2024) (per curiam) (defendant's conduct fell "'squarely within the classic variety of

identity theft left untouched by *Dubin*'" where defendant's "fraud was in misrepresenting '*who*

received the services'" because he "used . . . students' information to make it appear that they

were enrolled at [a certain school when they in fact received schooling elsewhere], which had the

effect of increasing state funding for [the school district]", and where defendant "oversaw the

creation of fraudulent enrollment forms and report cards to carry out this scheme") (quoting

*Gladden*, 78 F.4th at 1245–46); *United States v. Fullerton*, No. 1:21-CR-216-RP, 2023 WL

6150782, at *4 (W.D. Tex. Sept. 20, 2023) (defendant liable for aggravated identity theft post-

*Dubin* where defendant used the names and social security numbers of six people to fraudulently

increase his Payroll Protection Program ("PPP") loan, because defendant received loans for

defunct companies that were not in operating at the time he submitted the PPP applications,

thereby "mispresent[ing] *who* was to be receiving the PPP funds" (emphasis added)); *United

States v. Jones*, No. 4:23CR09 (RCY), 2023 WL 4672383, at *5 (E.D. Va. July 20, 2023)

(defendant who used another person's identity to receive a passport committed aggravated

identity theft, explaining that *Dubin*'s "'use' modality requires deceit as to who is the recipient of

the benefit or service", even if the "victim" acceded to the use of his or her identity).

### 3. Mr. Boykins' Alleged Conduct Falls Squarely Within the Scope of § 1028A(a)(1)

To defraud Medicaid, Mr. Boykins allegedly submitted to his employers falsified,

individual-specific documentation indicating that he provided face-to-face therapy to Medicaid

recipients in Richmond, Virginia when, in fact, such therapy never occurred. (ECF No. 3 ¶¶ 4,

8–10, 14, 21.) The documentation included specific but false details about the treatment Mr.

Boykins administered to patients. (ECF No. 3 ¶¶ 16–17.) On at least two occasions, the

16

documentation included "[t]he name, date of birth and insurance identification number" of a patient Mr. Boykins falsely claimed to have provided MHSS services for.  (ECF No. 3 ¶ 21.)

Presuming the allegations in the indictment as true, *Treacy*, 677 F. App'x at 873, the facts here readily satisfy the "crux" standard articulated in *Dubin*.  Mr. Boykins' misappropriation of Medicaid recipients' identities to create false medical records and submit falsified billing records using their names for services they never received plainly is the key mover, or "[t]he crux of [his] healthcare fraud." *See Dubin*, 599 U.S. at 132.  Because the crux, or central role, of Mr. Boykins' fraud involves misrepresenting "*who* received the [MHSS] services", his deceitful use of unsuspecting Medicaid patients' personal information falls squarely within the scope of § 1028A(a)(1).[12]  *See id.* at 132; *see also Gladden*, 78 F.4th at 1246, 1248; *Carter*, 2024 WL 20847, at *9; *United States v. Muhammad*, No. 3:21CR34 (DJN), 2024 WL 3278958, at *13 (E.D. Va. July 2, 2024) (concluding, in post-conviction context, that theft of names and identities of Medicaid recipients who were not Muhammad's patients placed the unauthorized use of these patients' identities "at the crux of what ma[de] [his] conduct fraudulent and [] not merely an

_____

[12] Mr. Boykins unsuccessfully seeks to distinguish his conduct from anything that would be governed by *Dubin* by stating that "all of the progress notes upon which the Government relies for proof of Aggravated Identity Theft include established clients of Mr. Boykins who[m] he routinely counseled and to whom he routinely provided service." (ECF No. 31, at 4.)  He asserts that "the identity of the recipient of services in the government's allegations of fraud '[was] an ancillary feature of the billing method employed'", (quoting *Dubin*, 599 U.S. at 132), as it would not "matter . . . what patient's information was tied to the progress notes submitted to Medicaid for billing." (ECF No. 27, at 8.)  He argues that his use of "patient[s'] names did not result in the payment for services, rather, it was [his] submission of documents attesting to services rendered that caused Medicaid to pay" for the fabricated services. (ECF No. 27, at 9.)

Such a position improperly blurs a key distinction made in the *Dubin* decision.  In *Dubin*, the Court deemed billing ancillary when *some services were received* but had been charged at a higher rate by misrepresenting the pedigree of the employee performing the services on a patient. Billing at the rate of the employee performing the services on that patient seemingly *could* have been submitted. Here, however, no services were performed – meaning *who* received services cannot help but be the crux of the fraud.  No one received services at all.

ancillary feature of a billing method", rendering any potential *Dubin* challenge futile (first

alteration in original) (internal quotation marks omitted)).

Because § 1028A(a)(1) clearly proscribes Mr. Boykins' conduct, the statute is not

unconstitutionally vague as applied to him. *See Iannelli*, 2023 WL 7165109, at *3 (rejecting

defendant's vagueness challenge to § 1028A(a)(1) where the statute "clearly proscribed"

defendant's conduct, and separately observing that "*Dubin* . . . cast significant doubt on future

void-for-vagueness challenges to [this statute]"); *see also Dubin*, 599 U.S. at 132 n.10 (rejecting

Justice Gorsuch's contention that § 1028A(a)(1) is unconstitutionally vague, even though courts

will be required, at times, to resolve "hard cases" when considering the applicability of the

statute); *see also Gladden*, 78 F.4th at 1246–47 (observing that defendant failed to preserve her

vagueness argument regarding § 1028A, that this argument "was not directly before the

[Supreme] Court in *Dubin*", but nonetheless stating that under *Dubin*'s "guidance, [the Eleventh

Circuit] decline[s] to find that [§] 1028A is unconstitutionally vague").   And because

§ 1028A(a)(1) clearly proscribes Mr. Boykins' alleged conduct, his facial challenge is also

foreclosed. *See Holder v. Humanitarian L. Project*, 561 U.S. 1, 18–19 (2010) ("A plaintiff who

engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law

as applied to the conduct of others.")

### 4.      Mr. Boykins' Concern About How Prosecutors Charged Five Eastern District of Virginia Cases Does Not Require A Different Finding

In his Supplemental Briefing, Mr. Boykins identifies "five cases in the Eastern District of

Virginia within the last two years" that, Mr. Boykins asserts, "contain strikingly similar facts"

where "the Government did not charge" any of the defendants with Aggravated Identify Theft.

(ECF No. 36, at 5.)   According to Mr. Boykins, these five examples demonstrate that the

Aggravated Identify Theft "statute can be applied in effectively every fraud case, or not applied",

which "encourages arbitrary and discriminatory enforcement" meaning that the statute "violates due process." (ECF No. 36, at 5.)   Having reviewed these court decisions, the Court disagrees.

The five cases raised by Mr. Boykins do not rise to the level of demonstrating constitutionally defective prosecutorial decision making.  First, three of the five cases cited by Mr. Boykins were charged by Criminal Information in circumstances where "the defendants . . . immediately waived indictment and pleaded guilty to the Information." (ECF No. 37, at 5 (citing *United States v. Jordan Broome*, 2:22cr79 (DEM), *United States v. Latty*, 2:23cr121 (EWH), and *United States v. Samuels*, 2:22cr95 (JAG)).)  Plainly, a resolution had been reached prior to these cases being charged, (*see* ECF No. 37, at 5), something that prevents this Court from using them as an apt comparison to the case at bar.  The United States sensibly observes that "it is unsurprising" that these defendants were likely "able to negotiate compromises, such as avoiding a mandatory minimum charge like Aggravated Identity Theft."[13]  (ECF No. 37, at 5.)

The two remaining cases raised by Mr. Boykins also involve dissimilarities that do not raise constitutional concerns about an arbitrary pattern of charging § 1028A that fails to meet due process principles.  Instead, both bring to the fore the frailty of Mr. Boykins' arguments here. Scattershot evaluation of prosecutorial decision making does not a constitutional policy make. The United States not unfairly contends that none of the highly fact-specific charging decisions in these five cases suggest that § 1028A is unconstitutional.  (ECF No. 37, at 1.)  The United States emphasizes that "prosecutors holistically approach and charge cases", stating:

> As a matter of common sense, and as required by Attorney General Merrick Garland by a 2022 Memorandum for all Federal Prosecutors, the following is a

---

[13] Any court should be loath to inject itself into plea negotiations.  The United States cautions the Court that "[t]reating the failure to charge a potentially applicable criminal statute as a constitutional violation even with defendants that are willing to quickly accept responsibility" could have a negative impact on defendants if prosecutors were forced "to charge every applicable statute in every case no matter the circumstances." (ECF No. 37, at 6.)

partial list of factors prosecutors weigh in deciding whether and how to charge criminal offenses: "federal law enforcement priorities; the nature and seriousness of the offense; the deterrent effect of prosecution; the person's culpability in connection with the offense; the person's history with respect to criminal activity; the person's willingness to cooperate in the investigation or prosecution of others; the person's personal circumstances; the interests of any victims; and the probable sentence or other consequences if the person is convicted."

(ECF No. 37, at 2 (citing Memo from Merrick Garland, Att'y Gen., U.S., to All Fed. Prosecutors, at 2 (Dec. 16, 2022) (the "Attorney General Memorandum")).)  Thus, the United States observes, "[g]iven the enormity of factors to consider, it is no surprise that sometimes facially similar cases are charged differently."  (ECF No. 37, at 2.)

For instance, in the fourth case cited by Mr. Boykins, *United States v. Davis*, 3:23cr135 (JAG), only some of the potential claims against Mr. Davis involved services not rendered at all. (*Davis*, 3:23cr135, ECF No. 1, at 5.)  More commonly, as alleged, Mr. Davis's fraudulent billing involved inflating the amount of time services were provided.  (*Davis*, 3:23cr135, ECF No. 1, at 5; *Davis*, 3:23cr135, ECF No. 25, at 2 ("[T]he majority of the case may boil down to defendant's unflinching desire to bill the maximum-allowed 5 hours of daily [Therapeutic Day Treatment ('TDT')] for every possible child despite [Davis's company's] TDT program actually lasting only 2-3 hours a day.").)  Mr. Davis also instructed providers to bill for activities that he knew were not reimbursable.  (*Davis*, 3:23cr135, ECF No. 1, at 5.)  In contrast, *all* of Mr. Boykins' false claims to Medicaid involved services not rendered.  The Supreme Court made plain in *Dubin* that § 1028A charges based on overbilling claims are not legally sound when compared to charges like those against Mr. Boykins that are based on services not being rendered at all. *See Dubin*, 599 U.S. at 131–32.

The final case Mr. Boykins raises, *United States v. Thomas*, 3:23cr130 (REP), cannot appropriately be weighed against the case at bar because *Thomas* involved a far wider span of

20

criminal conduct than that implicated here. The difference is one of scale. Mr. Boykins faces just six criminal counts involving two criminal statutes. (ECF No. 3, at 1.) The United States correctly observes that he "faces an effective statutory maximum of ten years on the grouped Health Care Fraud counts and two years on the § 1028A counts." (ECF No. 37, at 8.) In contrast, Mr. Thomas and his co-conspirators faced 28 counts under eight separate statutes covering fraud, false statement, and obstruction charges. *United States v. Thomas*, 3:23cr130 (REP) (ECF No. 3, at 1). As a result, "Thomas faced 95 years of statutory maximums, counting each statute only once." (ECF No. 37, at 8.) That two possible § 1028A counts went uncharged in *Thomas* does not suggest a constitutional violation given the factual differences between the *Thomas* and *Boykins* cases. The United States once again not unfairly cites the Attorney General Memorandum which directs prosecutors to contemplate "which charges will lead to a 'proportional' result at sentencing and that '[s]uch decisions should be informed by an individualized assessment of all the facts and circumstances of each particular case.'" (ECF No. 37, at 8 (quoting Attorney General Memorandum, at 2–3).)

Thus, even considering the cases raised by Mr. Boykins in his Supplemental Briefing as well as *United States v. Dubin*, the Court concludes that 18 U.S.C. § 1028A(a)(1) is not unconstitutional. And because § 1028A(a)(1) clearly proscribes Mr. Boykins' alleged conduct, his facial challenge is also foreclosed. *See Holder v. Humanitarian L. Project*, 561 U.S. 1, 18–19 (2010) ("A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.").

### IV.  Conclusion

For the foregoing reasons, the Court will deny the Motion to Dismiss.  (ECF No. 27.)

An appropriate Order shall issue.

Date: 7/17/24
Richmond, Virginia

_____ /s/
M. Hannah Lauck
United States District Judge